**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CYNTHIA RUSSO,**

Plaintiff,

v.

**AETNA LIFE INSURANCE COMPANY,**

Defendant.

Civil Action No. 26-1550 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss, filed by Defendant Aetna Life Insurance Company ("Aetna") (the "Motion," ECF No. 10), the Complaint filed by Plaintiff Cynthia Russo ("Russo"), by her attorney in fact Steve Paragioudakis, MD ("Dr. Paragioudakis," and together with Russo, "Plaintiff") (ECF No. 1.) Aetna filed a moving brief in support of the Motion ("Moving Br.," ECF No. 10-1.) Plaintiff filed an opposition. ("Opp'n Br.," ECF No. 11.) Aetna filed a reply. ("Reply Br.," ECF No. 14.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will **GRANT** the Motion and **DISMISS** the Complaint without prejudice.

## I. BACKGROUND

This case stems from Aetna's refusal to cover certain expenses for out-of-network medical services provided by Dr. Paragioudakis to Russo on February 23, 2021 (the "Treatment"). (Compl.

¶ 7.) Specifically, Russo "underwent emergency spine surgery for the treatment of cervical myelopathy and cervical spinal stenosis stemming from acute chronic neck and back pain." (*Id.* ¶ 8.) At the time of this treatment, Russo was a beneficiary of an employer-based health insurance plan (the "Plan"), for which Aetna served as claims administrator. (*Id.* ¶ 9.) After Russo's treatment, Dr. Paragioudakis submitted Health Insurance Claim Forms ("HICF") to Aetna, billing Aetna a total of $231,323 for the emergency services provided by Dr. Paragioudakis. (*Id.* ¶¶ 10–11.) Dr. Paragioudakis provided that "the spinal surgery performed on [Russo] was of an emergent nature and required immediate attention." (*Id.* ¶ 23.) Ultimately, Aetna issued Explanation of Benefits ("EOB") forms to Russo over the next several months amounting to $7,251.45 in reimbursement for the emergency spine surgery performed by Dr. Paragioudakis. (*Id.* ¶ 12.) The EOB forms stated that Russo's responsibility was $0.00 in response to her billed charges. (*Id.* ¶ 13.) The EOB forms also made clear that "Paragioudakis was an out-of-network doctor." (*Id.* ¶ 22–25.) Moreover, the EOB forms provided that Russo was not being balanced billed for the remainder of any charges after the Plan had paid covered expenses for the procedures performed on February 23, 2021. (*Id.* ¶ 27.)

The Plan provides a "SPECIAL REIMBURSEMENT PROVISIONS" sections (the "SRP") whereby, in certain circumstances, the Plan will reimburse out-of-network medical providers "[a]s if the care was provided In-Network (including any applicable cost-sharing like coinsurance, copays and Out-of-Pocket Limit) and the allowance for bills will be reimbursed according to the billed charge for Out-of-Network providers." (*Id.* ¶ 14.) The SRP further reserves "the right to have the billed amount of a claim negotiated for a discount and/or reviewed by an independent medical review firm/provider to assist in determining if the charges are medically necessary and/or for a medical emergency." (*Id.* ¶ 15.) The SRP applies, among other instances,

where: (i) "[t]he individual had care for a medical emergency (as emergency is defined in this Plan) at a provider outside the In-Network service area"; and (ii) "[t]he individual was treated/confined in an In-Network facility but an Out-of-Network provider (outside the patient's control) performed certain Medically Necessary covered services such as an emergency room visit . . . or assistant surgeon services." (*Id.* ¶¶ 16–17.) Pursuant to these provisions, Plaintiff alleges that the Plan "pays out-of-network doctors performing emergency services at an in-network rate, whether those services are performed at an in-network facility by an out-of-network doctor for an emergency room visit, or simply performed by an out-of-network doctor. . . [and the Plan further] reserves the right to negotiate a separate amount with the out-of-network doctor directly." (*Id.* ¶ 18.) Under the Plan, expenses from "Urgent Care Services" provided by in-network doctors are 100% covered with a $10 copay. (*Id.* ¶ 20.) The Plan defines "Urgent Care Services" as "Health care services that are required by the onset of a medical condition that manifests itself by symptoms of sufficient severity that prompt medical attention is appropriate even though health and life is not in jeopardy." (*Id.* ¶ 21.)

Based on the foregoing, Plaintiff contends that Russo's surgery constitutes "Urgent Care Services" that should have been reimbursed at in-network rates because they were performed by an out-of-network doctor, through no fault of Russo. (*Id.* ¶ 24.) After Aetna sent the EOB forms, Plaintiff submitted three separate appeals to Aetna seeking to overturn the reimbursement amount provided for the Treatment — April 14, 2021, May 3, 2021, and September 20, 2021. (*Id.* ¶¶ 32–38.) Aetna did not respond to these appeals. (*Id.*) On April 7, 2023, Russo executed a limited power of attorney ("Limited POA") in New Jersey delegating Dr. Paragioudakis as her attorney in fact under the laws of the State of New Jersey. (*Id.* ¶¶ 2, 4.) Pursuant to the Limited POA, Russo granted Dr. Paragioudakis "the power to pursue, by any means necessary, the collection of monies,

funds, and benefits which may be due from [Russo's] insurance company for medical services provided by Paragioudakis, among other things." (*Id.* ¶ 3.)

Russo ultimately filed her complaint on February 17, 2026 seeking to recover the difference between the reimbursement received from Aetna and the cost of the Treatment pursuant to 29 U.S.C. §§ 1132(a)(1)(B).[1] (ECF No. 1.) Thereafter, Aetna filed this Motion.

## II. SUBJECT MATTER JURISDICTION

Plaintiff asserts that this Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e).

## III. LEGAL STANDARD

### A. RULE 12(b)(1)

Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). Standing under Article III of the United States Constitution is an element of subject matter jurisdiction. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

When considering a Rule 12(b)(1) standing challenge, the Court must determine whether the attack is facial or factual. *Schering Plough*, 678 F.3d at 243. "A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because . . . it does not present a question of federal law, or because . . . some other jurisdictional defect is present." *Const. Party of Pa. v.*

[1] This statute codifies Section 502(a)(1) of the Employee Retirement Income Security Act ("ERISA"). This statute is referred to hereinafter as "Section 502."

*Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). If the defendant challenges jurisdiction in its Rule 12(b)(1) motion before answering the complaint or "otherwise present[ing] competing facts," the Rule 12(b)(1) motion is, "by definition, a facial attack." *Const. Party of Pa.*, 757 F.3d at 358 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 n.17 (3d Cir. 1977)).

When analyzing a facial attack on subject-matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Schering Plough*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). "The person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). However, a facial challenge, "which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig*, 836 F.3d at 268 (citation omitted); *accord Mortensen*, 549 F.2d at 891.

Factual attacks, in contrast, argue that subject matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction." *Const. Party of Pa.*, 757 F.3d at 358. The presumption of truth does not extend to factual attacks, "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. Courts are permitted, however, to weigh and consider facts "outside the pleadings" to decide whether subject matter jurisdiction is proper. *Const. Party of Pa.*, 757 F.3d at 358.

## IV. **DISCUSSION**

Aetna moves to dismiss the Complaint on three grounds. First, Aetna argues that the Limited POA is defective pursuant to New Jersey Revised Durable Power of Attorney Act ("RDPAA"), N.J.S.A. 46:2B-8.1 *et seq.*, and, therefore, Dr. Paragioudakis cannot maintain this lawsuit. Second, even if the Limited POA is effective, Aetna contends that it is a mere "proxy" of Russo and therefore Plaintiff lacks standing to bring this lawsuit on Russo's behalf because ERISA confers standing only upon the beneficiary, not a proxy thereof. And third, Aetna avers that even if the aforementioned arguments are futile, the Complaint nonetheless fails to state a claim under Section 502.

The Court begins by assessing whether it has subject matter jurisdiction over this case. Because Aetna asserts that the allegations in the Complaint do not support subject matter jurisdiction, the Court construes Aetna's jurisdiction challenge as a facial attack, and it accepts all allegations in the Complaint as true for purposes of its analysis. *Hartig*, 836 F.3d at 268.

Generally, only a participant or beneficiary under a plan has standing to bring an ERISA claim. 29 U.S.C. § 1132(a)(1); *NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 522 (D.N.J. 2013) (citing 29 U.S.C. § 1132(a)). "[H]ealth care providers . . . are not 'beneficiaries' or 'participants' as defined by ERISA, and thus these entities may not seek relief in their own name under the ERISA statute itself." *McCall v. Metro. Life Ins. Co.*, 956 F. Supp. 1172, 1185 (D.N.J. 1996). Dr. Paragioudakis, as a healthcare provider, is neither a participant nor a beneficiary. *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). ERISA, however "is silent on the issue of standing." *Univ. Spine Ctr. v. Aetna, Inc.*, Civ. No. 17-13654, 2018 WL 1757027, at *2 (D.N.J. Apr. 12, 2018). In the Third Circuit, "a healthcare provider may bring a cause of action by

acquiring derivative standing through an assignment of rights from the plan participant or beneficiary to the healthcare provider." *Id.* "Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *North Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).

The insurance industry appears to have adapted, however, and claims brought by assignees have been filed less frequently in more recent years. This is because, "[w]hile assignment of benefits may confer standing, 'anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable.'" *O'Brien v. Aetna, Inc.*, Civ. No. 20-5479, 2021 WL 689113, at *2 (D.N.J. Feb. 23, 2021) (quoting *American Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018)). As such, "where the participant's plan contains an unambiguous anti-assignment provision, providers are precluded from derivative standing." *Abramson v. Aetna Life Ins. Co.*, Civ. No. 22-05092, 2023 WL 3199198, at *5 (D.N.J. May 2, 2023) (citing *Am. Orthopedic & Sports Med.*, 890 F.3d at 453); *see also E. Coast Aesthetic Surgery, P.C. v. UnitedHealthcare*, Civ. No. 17-13595, 2018 WL 3201798, at *2–3 (D.N.J. June 29, 2018) (holding that plan provision requiring "consent" to assignment was a valid and enforceable anti-assignment provision and deprived plaintiff of ERISA standing).

However, in *Am. Orthopedic*, the Third Circuit held that anti-assignment clauses do not preclude an insured from "grant[ing] a valid power of attorney" that "confer[s] on his agent the authority to assert [a] claim on his behalf." 890 F.3d at 455. The Third Circuit explained that "[a]ssignments and powers of attorney differ in important respects with distinct consequences for the power of a plan trustee to contractually bind an insured." *Id.* at 454. Assignments "purport[ ] to transfer ownership of a claim to the assignee, giving it standing to assert those rights and to sue

on its own behalf," while powers of attorney do "'not transfer an ownership interest in the claim.'" *Id.* at 454–55 (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008)). Rather, a power of attorney "simply confers on the agent the authority to act 'on behalf of the principal.'" *Id.* at 455 (quoting *In re Complaint of Bankers Tr. Co.*, 752 F.2d 874, 881 (3d Cir. 1984)). The Third Circuit later clarified its holding in *Am. Orthopedic* by acknowledging that while there is a "possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf, for most out-of-network providers, the rising prevalence of anti-assignment provisions signals the proverbial end of the road for [providers to obtain] relief under section 502(a)." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 228–29 (3d Cir. 2020) (citation omitted).

Here, the Plan contains an anti-assignment clause. The Plan prohibits any "anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge" of benefits. (*See* Certification of Michael Holzapfel Cert. ("Holzapfel Cert."), ECF No. 10-2, Ex. A ("Plan") at 125). The Court finds that the plain language of the Plan prohibits participants from giving healthcare providers the right to receive any payments for medical services. *See Enlightened Solutions, LLC v. United Behavioral Health*, Civ. No. 18-6672, 2018 WL 6381883, at *3, *5 (D.N.J. Dec. 4, 2018) (concluding that statement that "[a] Claimant may not assign his/her Claim under the Plan to a Nonparticipating Provider without the Plan's express written consent" was an unambiguous anti-assignment clause). Russo does not challenge this clause or make any argument that it is ambiguous. Therefore, Dr. Paragioudakis cannot use an assignment of rights to establish standing. *See O'Brien*, 2021 WL 689113, at *3.

Rather, Plaintiff contends that standing is established via power of attorney. (Opp'n Br. at 3.) Plaintiff attaches an executed Power of Attorney to the Complaint (Compl. at Ex. A, "Limited

POA," ECF No. 1-1.), which authorizes Dr. Paragioudakis to "pursue by any means necessary the collection of monies, funds, benefits, which may be due from [Russo's] insurance company or plan sponsor for medical/surgical services performed by [Dr. Paragioudakis] on [Russo.]" (Limited POA at Art. II(a).)

Before determining whether the Limited POA is valid and enforceable or whether Plaintiff has standing to bring this lawsuit, the Court first considers the framework of the lawsuit itself: the lawsuit names "Cynthia Russo by her attorney in fact Steve Paragioudakis MD" as Plaintiff; Plaintiff alleges that naming Dr. Paragioudakis as Russo's power-of-attorney to recover monies for services Dr. Paragioudakis rendered in connection with the Treatment is acceptable pursuant to the Limited POA that Russo signed (Compl. ¶¶ 2–3); and now Plaintiff argues that Plaintiff has standing because (1) Dr. Paragioudakis is not suing in his own capacity — Russo retained ownership of the claim and is the named plaintiff, and (2) Russo suffered an injury — Aetna failed to reimburse Dr. Paragioudakis or his medical practice for the Treatment. (Opp'n Br. at 12.) Plaintiff contends that these assertions defeat Aetna's standing argument.

Read as a whole, however, the Limited POA effectively transfers Russo's interest in recovery to Dr. Paragioudakis. That is the hallmark of an assignment. Indeed, the Third Circuit has recognized that the "value" of an assignment of benefits "lies in the fact that providers . . . can treat patients without demanding they prove their ability to pay up front," and "[p]atients increase their access to healthcare and transfer responsibility for litigating unpaid claims to the provider, which will ordinarily be better positioned to pursue those claims." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 373 (3d Cir. 2015). In essence, like an assignment, the Limited POA allows Dr. Paragioudakis to pursue Russo's claims as if they were his own, rather than on Russo's behalf. The Plan, however, prohibits benefits payable thereunder from "anticipation, alienation,

sale, transfer, assignment, pledge, encumbrance, or charge." (Plan at 125.) Russo neither challenges the enforceability of this anti-assignment provision nor alleges that Aetna consented to an assignment. (*See generally* Opp'n Br.)

The Court is persuaded that the Limited POA qualifies as an assignment, not a power of attorney, and is barred by the anti-assignment provision in Russo's Plan. Although the Limited POA is titled "Limited Power of Attorney," (Compl., Ex. A, ECF No. 1-1), read as a whole, it "purports to transfer ownership of" Russo's rights to recovery to Dr. Paragioudakis — an arrangement consistent with an assignment. *Tamburrino v. UnitedHealth Grp. Inc.*, Civ. No. 21-12766, 2022 WL 1213467, *3 (D.N.J. April 25, 2022) (denying standing where the "[p]urported POA qualifie[d] as an assignment, not a power of attorney, and [was] barred by the anti-assignment provision in [the patient's] insurance plan" which, "read as a whole . . . 'purports to transfer ownership of' [the patient's] rights to recovery to [the doctor] – an arrangement consistent with an assignment"); N.J.S.A. 46:2B–8.13(a) ("An attorney-in-fact has a fiduciary duty to the principal . . . to act within the powers delegated by the power of attorney and solely for the benefit of the principal."); *see also Am. Orthopedic*, 890 F.3d at 455. Here, Dr. Paragioudakis is not acting "solely for the benefit of the principal," but for his own benefit and that of his medical practice, which filed the appeals referenced in the Complaint. (Holzapfel Cert, Exs. C–E). Hence, the *only* express power the Limited POA here grants is the power to "collect monies, funds, or benefits that may be due" for the Treatment. (Compl. at Ex. A).

To that end, it is apparent that Dr. Paragioudakis is not acting "solely for the benefit of" Russo. According to Article II of the Limited POA, Russo grants "limited powers and rights necessary" to Dr. Paragioudakis to "pursue by any means necessary the collection of monies, funds, benefits, which may be due from [Russo's] insurance company or plan sponsor for

medical/surgical services performed by [Dr. Paragioudakis] on [Russo] . . . [including] the right to initiate litigation in both state and federal court, the right to collect monies owed on [Russo's] behalf and for any other means necessary to effect the collection of monies, funds or benefits which may be due [to Russo] for services rendered by [Dr. Paragioudakis]." (Limited POA at Art. II(a).) Quite blatantly, the Limited POA designates Dr. Paragioudakis as Russo's "limited health care proxy allowing [Dr. Paragioudakis] to . . . receive all medical benefits from any insurer." (*Id.* at Art. IV.) However, it fails to impose an "affirmative" *obligation* on Dr. Paragioudakis to act on Russo's behalf. Once more, Dr. Paragioudakis' medical practice filed all three appeals with Aetna — from the start, Dr. Paragioudakis has not hidden the fact that he is seeking to recover unpaid benefits for his (or his practice's) benefit, not Russo's. This sequence is not indicative of an attorney-in-fact acting on behalf of the principal in a power-of-attorney context. N.J.S.A. 46:2B–8.13(a) ("An attorney-in-fact has a fiduciary duty to the principal . . . to act within the powers delegated by the power of attorney and solely for the benefit of the principal."); *also see Am. Orthopedic*, 890 F.3d at 455. Rather, Dr. Paragioudakis appears to be acting pursuant to the *only* express power granted to him in the Limited POA: to "collect monies, funds, or benefits that may be due" for the Treatment. (Limited POA, Art. I). These are unpaid benefits which the Complaint fails to allege that Russo has been billed for.

In *Hutchins v. Teamsters Western Region & Local 177 Healthcare Plan, et al.*, Civ. No. 22-04583, 2023 WL 2859803, at *4 (D.N.J. Apr. 10, 2023), the district court was faced with a fact pattern nearly identical to the instant matter: the insured, Hutchins, underwent spinal surgery performed by Dr. Tainsh; Aetna, Hutchins' healthcare insurer, paid a fraction of the procedure cost because Dr. Tainsh and/or her medical group was an out-of-network provider; as a result, Hutchins executed a limited power of attorney appointing Dr. Tainsh as his attorney-in-fact and agent, and

granted Dr. Tainsh authority to "pursue by any means necessary the collection of monies, funds, benefit, which may be due from [his] insurance company or plan sponsor for medical/surgical services performed by [Dr. Tainsh's medical group] on [him]." *Id.* at *1. The relevant surgical services performed were subject to the NJNSA. *Id.* at *3–4. Hutchins brought suit against Aetna, by his attorney-in-fact, Dr. Tainsh, seeking to recover unpaid benefits in connection with the spinal surgery. *Id.* The court found that Dr. Tainsh was "not functioning as an agent on behalf of a principal . . . [because] any recovery achieved will not benefit Mr. Hutchins in any way, as—pursuant to the NJNSA—he does not owe a debt to Dr. Tainsh, and she is not seeking to vindicate a right on his behalf." *Id.* The court explained that the NJNSA mandated arbitration procedures, which Dr. Tainsh did not initiate. *Id.* As to injury, Hutchins conceded that there was no dispute between him and his medical provider for payment of the services. *Id.* The court reasoned that there was no standing to bring the lawsuit for two reasons: (1) the dispute was subject to arbitration under the NJNSA, and (2) Hutchins did not owe any balance of the bill — in other words, Hutchins suffered no injury. *Id.*

The facts of the instant case are similar to those in *Hutchins*. The only differences here sound in the applicability of the NJNSA, which turn on whether arbitration is compelled and, more importantly, whether Russo is responsible for the unpaid balance of the bill for the Treatment. Plaintiff contends that the NJNSA does not apply because the Plan is self-funded and not opted into the NJNSA, and therefore "the medical practice *may* be able to balance bill the Plaintiff." (Opp'n Br. at 12 (emphasis added).) Plaintiff avers that because Aetna's failure to pay the full balance "opened [Russo] up to balance billing," that failure necessarily establishes an injury to Russo. The Court disagrees. Nowhere in the Complaint is it alleged that Russo has been or will be billed for the unpaid balance of the Treatment. Instead, Plaintiff simply alleges that

"Paragioudakis's HFCAs billed Aetna a total of $231,323" for the Treatment. (Compl. ¶ 11.) To be sure, the Complaint explicitly reveals the true motive of this lawsuit, further alleging that "*Plaintiff* has been damaged and *continues to suffer damages in the operation of its medical practice*." (*Id.* ¶ 48 (emphasis added).) Unmistakably, Russo does not operate a medical practice, Dr. Paragioudakis does. The Complaint fails to allege an injury to Russo, yet expressly alleges injury to Dr. Paragioudakis and/or his practice.[2]

The Court declines to empower Dr. Paragioudakis to bring this lawsuit on behalf of Russo under the guise of the Limited POA, for the sole purpose of recovering damages suffered by Dr. Paragioudakis' medical practice. *N.J. Spine & Orthopedics, LLC v. Bae Sys., Inc.*, Civ. No. 19-10735, 2020 WL 491258, at *2 (D.N.J. Jan. 29, 2020) (dismissing for lack of ERISA standing claims brought by healthcare provider pursuant to a power of attorney even though complaint caption stated healthcare provider was proceeding as an attorney in fact). Plaintiff's reliance on *Abramson*, 2023 WL 3199198 at *1, does not cure the deficiencies in the Complaint. In *Abramson*, the court only found that the healthcare provider had standing to bring a lawsuit for unpaid benefits on behalf of a patient as the patient's attorney-in-fact because it was *specifically alleged that the patient owed* the unpaid balance billed for the medical services. *Id.* at *9. As explained above, the Complaint here is devoid of any obligation, expressly or implicitly, that Russo owes the unpaid balance billed for the Treatment. The Court is not persuaded by Plaintiff's *argument* that Russo has suffered an injury because "the medical practice may be able to balance bill" her. (Opp'n Br. at 11–12.) There is no allegation in the Complaint to suggest that Russo has been balance-billed by Dr. Paragioudakis or his practice for the Treatment, and the mere possibility that Russo could

[2] There are three well-recognized elements of Article III standing: (1) the plaintiff suffered an "injury in fact"; (2) the injury suffered was caused by an "invasion of a legally protected interest"; and (3) the injury is "concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

be subject to balance billing for the Treatment at some point in the future does not amount to a concrete injury for standing purposes.

The Court will therefore dismiss Plaintiff's ERISA claim for lack of standing without prejudice. As a result, Court finds it lacks subject matter jurisdiction over this case, and does not reach the parties' Rule 12(b)(6) arguments as to the sufficiency of the allegations in the Complaint.

## V. CONCLUSION

For the reasons stated above, the Court will **GRANT** Aetna's Motion. Accordingly, the Court will **DISMISS** Russo's Complaint without prejudice. Plaintiff will be given 30 days to file an Amended Complaint, limited to addressing the deficiencies identified herein. An appropriate Order will follow.

Date: November 20, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**